IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-120-D-12

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| KASHIF ARDE RHODES, ) | |
| ) | |
| Defendant. ) | |

On February 12, 2021, Kashif Arde Rhodes ("Rhodes" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 612]. On January 24, 2022, the government responded in opposition [D.E. 661]. As explained below, the court denies Rhodes's motion.

I.

On August 15, 2017, Rhodes pleaded guilty without a plea agreement to possession of a firearm by a felon. See [D.E. 286]. On February 6, 2018, the court held Rhodes's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); [D.E. 389]; Sent. Tr. [D.E. 439] 5; PSR [D.E. 337]. After hearing arguments and evidence, overruling Rhodes's objections, and considering another guideline issue, the court calculated Rhodes's total offense level to be 27, his criminal history category to be III, and his advisory guideline range to be 87 to 108 months' imprisonment. See Sent. Tr. at 5–53. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Rhodes to 102 months' imprisonment. See Sentencing Tr. at 58–62; [D.E. 402].

Rhodes appealed. See [D.E. 410]. On January 4, 2019, the United States Court of Appeals for the Fourth Circuit affirmed. See United States v. Rhodes, 746 F. App'x 287 (4th Cir. 2019) (per curiam) (unpublished); [D.E. 508].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A)(i)–(ii); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those

2

circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children, incapacitated spouse, or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.1. "[T]he fact that an

3

extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude [its] consideration for a reduction." Id. § 1B1.13, cmt. n.2.

On October 7, 2020, Rhodes applied to his warden for compassionate release. See [D.E. 612-1] 6–8. More than 30 days have passed, and the government agrees that Rhodes satisfied section 3582(c)(1)(A)'s threshold timing requirements. See Muhammad, 16 F.4th at 130; [D.E. 661] 73. Accordingly, the court considers Rhodes's motion on the merits.

In support of his motion for compassionate release, Rhodes cites the COVID-19 pandemic and the BOP's response, his health conditions, his mother's illness, alleged sentencing disparities,[1] and his rehabilitation efforts. See [D.E. 612].

Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). As for his medical conditions, Rhodes argues that his "immunodeficiency caused by years of smoking, BMI . . ., bronchitis, hernias, and high blood pressure" place him at heightened risk of serious infection from COVID-19. [D.E. 612] 4. Rhodes, however, refused the COVID-19 vaccine. See [D.E. 661-1]. Rhodes has not disclosed to the court

---

[1] Rhodes repeatedly claims his sentence would be lower if he were sentenced today. See, e.g., [D.E. 612] 2, 17–18. At various points he refers to his perception of the policy changes intended in the Fair Sentencing and First Step Acts, the sentence he would have received had he been prosecuted for the same offense in state court, and Rehaif v. United States, 139 S. Ct. 2191 (2019). See id. at 13, 17–19. On November 16, 2021, Rhodes's appointed counsel moved to withdraw Rhodes's section 2255 motion based on Rehaif in light of Greer v. United States, 141 S. Ct. 2090 (2021). See [D.E. 646]. On December 22, 2021, the court granted the motion. See [D.E. 657]. The Fair Sentencing Act does not apply to 18 U.S.C. § 922(g), and the "sentencing disparity" that Rhodes alleges is not an extraordinary and compelling reason.

4

any religious or medical reason why he cannot receive a COVID-19 vaccine. "[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see also United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished) ("District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release."); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished) ("But these [health] risks can be significantly ameliorated by vaccination, and the district court correctly explained that defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect them." (cleaned up)); United States v. Church, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) (per curiam) (unpublished) ("We agree that [defendant's] unexplained refusal to accept a COVID-19 vaccination when offered negates his otherwise compelling medical reasons for release" (quotation omitted)); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, No. 21-6594, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Baeza-Vargas, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate refusing a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished); United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19,

5

2022) (per curiam) (unpublished). Besides the heightened risk of COVID-19 infection dues to his medical conditions, Rhodes does not otherwise allege that the BOP is not treating and monitoring his conditions or that he is unable to provide self-care while incarcerated. And arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current conditions at Yazoo City Medium FCI where Rhodes is incarcerated,[2] and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19 _response (last visited June 27, 2022); cf. United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Moreover, although Rhodes has refused the COVID-19 vaccine, the wide availability of COVID-19 vaccines for others means that Rhodes "largely faces the same risk from COVID-19 as those who are not incarcerated." Lemons, 15 F.4th at 751. Moreover, the availability of COVID-19 vaccines continues to afford Rhodes the ability to reduce his risk should he so choose. See Thomas, 2022 WL 296594, at *2; Kennedy, 2022 WL 43187, at *2; Broadfield, 5 F.4th at 803. Accordingly, reducing Rhodes's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Rhodes also argues his mother's lung cancer is an extraordinary and compelling reason justifying compassionate release. See [D.E. 612-1] 2. The "family circumstances" policy statement does not apply to circumstances involving a defendant's parents. See U.S.S.G. § 1B1.13 cmt. n.1(C). Nonetheless, the court considers Rhodes's mother's illness under the "other reasons" policy statement. See 18 U.S.C. § 3582(c)(1)(A).

---

[2]As of June 23, 2022, Yazoo City Medium FCI has reported one current inmate confirmed test positive, and zero staff positives. See https://www.bop.gov/coronavirus (last visited June 27, 2022).

6

The court assumes without deciding that COVID-19 and Rhodes's health conditions, his mother's illness, and his rehabilitation efforts constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Rhodes's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Rhodes is 33 years old and is incarcerated for possession of a firearm as a felon. See PSR ¶¶ 1, 12. Rhodes was a validated United Blood Nation Nine Trey member with the rank of Two-Star General. See id. ¶ 53. He "sold heroin, crack cocaine, and he carried firearms." Id. Rhodes engaged in a high speed flight in an attempt to flee from law enforcement and intentionally struck numerous police vehicles. See Sent. Tr. 15–53. Before the conviction for which he is currently incarcerated, Rhodes had a substantial criminal record including convictions for possession of marijuana, possession with intent to sell and distribute a counterfeit controlled substance (two counts), carrying a concealed gun, assault on a female, possession with intent to manufacture, sell, and deliver heroin, possession of methamphetamine, possession of a firearm by a felon (two counts), and robbery with a dangerous weapon. See PSR ¶¶ 59–66.

Rhodes has taken some positive steps while federally incarcerated. For example, Rhodes has completed a drug treatment program and has taken several education courses. See [D.E. 612] 10–11; [D.E. 612-1] 14–16. Rhodes also states that he has taken advantage of his time in prison to gain new skills and hobbies and deepen his religious faith. See [D.E. 612-1] 12. Rhodes, however, has also incurred multiple infractions including refusing to obey an order (three infractions), being

7

in an unauthorized area, assaulting without serious injury (two infractions), possessing a dangerous weapon, and phone abuse. See [D.E. 661-3] 1–2.

The court must balance Rhodes's mixed post-sentencing record with his serious criminal conduct, his terrible criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, No. 20-1650, 2022 WL 2295029, at *12 (U.S. June 27, 2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Rhodes's potential exposure to COVID-19, his medical conditions, his mother's illness, and his release plan. The court recognizes that Rhodes has supportive family members who would help him if released. See [D.E. 612-1] 2–3. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Rhodes's arguments, the government's persuasive response, the need to punish Rhodes for his serious criminal behavior, to incapacitate Rhodes, to promote respect for the law, to deter others, and to protect society, the court denies Rhodes's motion for compassionate release. See, e.g., Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 612].

SO ORDERED. This 27 day of June, 2022.

JAMES C. DEVER III
United States District Judge

8